UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON

ALLEN KEY,

        Plaintiff,

  v.

NANCY A. BERRYHILL, Deputy Commissioner of Social Security for Operations,

        Defendant.

NO. C17-5785-JPD

ORDER REVERSING AND REMANDING CASE FOR FURTHER ADMINISTRATIVE PROCEEDINGS

Plaintiff Allen Key appeals the final decision of the Commissioner of the Social Security Administration ("Commissioner") which denied his applications for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401-33, after a hearing before an administrative law judge ("ALJ"). For the reasons set forth below, the Court ORDERS that the Commissioner's decision be REVERSED and REMANDED.

          I.     FACTS AND PROCEDURAL HISTORY

At the time of the administrative hearing, plaintiff was a fifty-three year old man with a high school education. Administrative Record ("AR") at 42, 44. His past work experience includes employment as an Army mechanic and as owner of a tow truck business, where he drove tow trucks, repaired the tow trucks as well as towed vehicles, and answered the phone. AR at 46-50. Plaintiff was last gainfully employed in May 2005. AR at 49.

ORDER - 1

On March 25, 2014, plaintiff protectively filed an application for DIB, alleging an onset date of August 22, 2008. AR at 20. Plaintiff asserts that he is disabled due to loss of balance, loss of memory, nerve damage, brain injury, vertigo, severe pain, insomnia, depression, stroke, ADD/ADHD, and TBI. AR at 255. His date last insured is December 31, 2013. AR at 20.

The Commissioner denied plaintiff's claim initially and on reconsideration. AR at 20. Plaintiff requested a hearing, which took place on December 14, 2015. AR at 20. On May 12, 2016, the ALJ issued a decision finding plaintiff not disabled and denied benefits based on her finding that the plaintiff did not have a severe impairment. AR at 23. Plaintiff's administrative appeal of the ALJ's decision was denied by the Appeals Council, AR at 1, making the ALJ's ruling the "final decision" of the Commissioner as that term is defined by 42 U.S.C. § 405(g). On October 3, 2017, plaintiff timely filed the present action challenging the Commissioner's decision. Dkt. 4.

## II. JURISDICTION

Jurisdiction to review the Commissioner's decision exists pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).

## III. STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits when the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 (9th Cir. 2005). "Substantial evidence" is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving any other ambiguities that might exist. *Andrews v. Shalala*,

ORDER - 2

53 F.3d 1035, 1039 (9th Cir. 1995). While the Court is required to examine the record as a whole, it may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). When the evidence is susceptible to more than one rational interpretation, it is the Commissioner's conclusion that must be upheld. *Id.*

The Court may direct an award of benefits where "the record has been fully developed and further administrative proceedings would serve no useful purpose." *McCartey v. Massanari*, 298 F.3d 1072, 1076 (9th Cir. 2002) (citing *Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996)). The Court may find that this occurs when:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting the claimant's evidence; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled if he considered the claimant's evidence.

*Id*. at 1076–77; *see also Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000) (noting that erroneously rejected evidence may be credited when all three elements are met).

### IV.     EVALUATING DISABILITY

As the claimant, Mr. Key bears the burden of proving that he is disabled within the meaning of the Social Security Act (the "Act"). *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999) (internal citations omitted). The Act defines disability as the "inability to engage in any substantial gainful activity" due to a physical or mental impairment which has lasted, or is expected to last, for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A claimant is disabled under the Act only if his impairments are of such severity that he is unable to do his previous work, and cannot, considering his age, education, and work experience, engage in any other substantial gainful activity existing in the

national economy. 42 U.S.C. §§ 423(d)(2)(A); *see also Tackett v. Apfel*, 180 F.3d 1094, 1098–99 (9th Cir. 1999).

The Commissioner has established a five step sequential evaluation process for determining whether a claimant is disabled within the meaning of the Act. *See* 20 C.F.R. §§ 404.1520, 416.920. The claimant bears the burden of proof during steps one through four. At step five, the burden shifts to the Commissioner. *Id.* If a claimant is found to be disabled at any step in the sequence, the inquiry ends without the need to consider subsequent steps. Step one asks whether the claimant is presently engaged in "substantial gainful activity." 20 C.F.R. §§ 404.1520(b), 416.920(b).[1] If he is, disability benefits are denied. If he is not, the Commissioner proceeds to step two. At step two, the claimant must establish that he has one or more medically severe impairments, or combination of impairments, that limit his physical or mental ability to do basic work activities. If the claimant does not have such impairments, he is not disabled. 20 C.F.R. §§ 404.1520(c), 416.920(c). If the claimant does have a severe impairment, the Commissioner moves to step three to determine whether the impairment meets or equals any of the listed impairments described in the regulations. 20 C.F.R. §§ 404.1520(d), 416.920(d). A claimant whose impairment meets or equals one of the listings for the required twelve-month duration requirement is disabled. *Id.*

When the claimant's impairment neither meets nor equals one of the impairments listed in the regulations, the Commissioner must proceed to step four and evaluate the claimant's residual functional capacity ("RFC"). 20 C.F.R. §§ 404.1520(e), 416.920(e). Here, the Commissioner evaluates the physical and mental demands of the claimant's past relevant work

---

[1] Substantial gainful activity is work activity that is both substantial, *i.e.*, involves significant physical and/or mental activities, and gainful, *i.e.*, performed for profit. 20 C.F.R. § 404.1572.

ORDER - 4

to determine whether he can still perform that work. 20 C.F.R. §§ 404.1520(f), 416.920(f). If the claimant is able to perform his past relevant work, he is not disabled; if the opposite is true, then the burden shifts to the Commissioner at step five to show that the claimant can perform other work that exists in significant numbers in the national economy, taking into consideration the claimant's RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(g), 416.920(g); *Tackett*, 180 F.3d at 1099, 1100. If the Commissioner finds the claimant is unable to perform other work, then the claimant is found disabled and benefits may be awarded.

## V. DECISION BELOW

On May 12, 2016, the ALJ issued a decision finding the following:

1. The claimant last met the insured status requirements of the Social Security Act on December 31, 2013.

2. The claimant did not engaged in substantial gainful activity during the period from his alleged onset date of August 22, 2008 through the date last insured of December 31, 2013.

3. Through the date last insured, the claimant had the following medically determinable impairments: cerebrovascular accident in 2005, lumbar degenerative disc disease, kidney stones and acid reflux, cognitive disorder, tinnitus, dementia, generalized anxiety disorder, adjustment disorder with depression and anxiety, ADHD, learning disorder, chronic balance disorder, pain disorder, obstructive sleep apnea/insomnia, blindness in right eye since birth, GERD, Barrett esophagus, and hiatal hernia.

4. Through the date last insured, the claimant did not have an impairment or combination of impairments that significantly limited the ability to perform basic work-related activities for 12 consecutive months; therefore, the claimant did not have a severe impairment or combination of impairments.

5. The claimant was not under a disability, as defined in the Social Security Act, at any time from August 22, 2008, the alleged onset date, through December 31, 2013, the date last insured.

AR at 22–29.

## VI. ISSUE ON APPEAL

The principal issue on appeal is:

1. Did the ALJ err at step two by finding no medically severe impairments? Dkt. 10 at 1.

## VII. DISCUSSION

A. <u>The ALJ Erred at Step Two by Finding No Medically Severe Impairments</u>

*1. Step Two Legal Standard*

At step two, a claimant must make a threshold showing that his medically determinable impairments significantly limit his ability to perform basic work activities. *See Bowen v. Yuckert*, 482 U.S. 137, 145 (1987) and 20 C.F.R. §§ 404.1520(c), 416.920(c). "Basic work activities" refers to "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. §§ 404.1521(b), 416.921(b). "An impairment or combination of impairments can be found 'not severe' only if the evidence establishes a slight abnormality that has 'no more than a minimal effect on an individual's ability to work.'" *Smolen*, 80 F.3d at 1290 (quoting Social Security Ruling (SSR) 85-28). "[T]he step two inquiry is a de minimis screening device to dispose of groundless claims." *Id.* (citing *Bowen v. Yuckert*, 482 U.S. 137, 153–54 (1987)).

To establish the existence of a medically determinable impairment, the claimant must provide medical evidence consisting of "signs—the results of 'medically acceptable clinical diagnostic techniques,' such as tests—as well as symptoms," a claimant's own perception or description of her physical or mental impairment. *Ukolov v. Barnhart*, 420 F.3d 1002, 1005 (9th Cir. 2005). A claimant's own statement of symptoms alone is not enough to establish a medically determinable impairment. *See* 20 C.F.R. §§ 404.1508, 416.908.

At step two, the ALJ in this case found that plaintiff had seventeen medically determinable impairments, including a "cerebrovascular accident in 2005, lumbar degenerative

ORDER - 6

disc disease, kidney stones and acid reflux, cognitive disorder, tinnitus, dementia, generalized anxiety disorder, adjustment disorder with depression and anxiety, ADHD, learning disorder, chronic balance disorder, pain disorder, obstructive sleep apnea/insomnia, blindness in right eye since birth, GERD, Barrett esophagus, and hiatal hernia." AR at 22.

However, the ALJ found that none of plaintiff's seventeen impairments were severe: "In sum, the claimant's physical and mental impairments, considered singly and in combination, do not significantly limit the claimant's ability to perform basic work activities." AR at 29. Plaintiff alleges that the ALJ "erred in finding that Plaintiff did not have any severe impairments." Dkt. 10 at 1. As discussed below, the Court finds that the ALJ erred because her conclusion that none of the seventeen impairments were "severe" was not supported by substantial evidence in the record.

> 2. *The ALJ Erred in Evaluating the Severity of Plaintiff's Mental Impairments*

Six of plaintiff's seventeen medically determinable impairments were mental impairments, including the cognitive disorder, dementia, generalized anxiety disorder, adjustment disorder with depression and anxiety, ADHD, and learning disorder. The ALJ must use a "special technique" when evaluating the severity of mental impairments at step two. *See* 20 C.F.R. § 404.1520a; *Keyser v. Comm'r Soc. Sec. Admin.*, 648 F.3d 721, 725 (9th Cir. 2011) (explaining that when an ALJ evaluates the severity of a claimant's mental impairment, she must follow a special psychiatric review technique, where she rates the degree of functional limitation in four functional areas). There are two components of this "special technique" that are relevant at step two: (1) for each mental impairment, the ALJ's "decision must show the significant history, including examination and laboratory findings," § 404.1520a(e)(4), and (2) the ALJ's "decision must include a specific finding as to the degree of limitation in each of the functional areas . . ." *Id.*

ORDER - 7

Here, the ALJ's decision properly included the second component of the special technique, *i.e.*, she included a specific finding regarding the degree of limitation in each of the functional areas. *See* AR at 29 (finding mild limitations in activities of daily living, social functioning, and concentration while finding no episodes of decompensation). However, the ALJ's decision contains almost no trace of the predicate component, wherein the ALJ must highlight the significant history, including examination findings. Specifically, the ALJ does not even mention any of the mental impairments in her "special technique" analysis, despite significant and probative examination evidence in the record.

For example, regarding plaintiff's cognitive disorder, multiple sources noted the impact of a cognitive disorder or cognitive impairment on plaintiff's ability to function. AR at 564, 630–31, 1097. At least one physician considered plaintiff's cognitive impairment to be significant in her assessment that the plaintiff was unable to work at all. AR at 1076. Similarly, plaintiff's dementia diagnosis was discussed throughout the record, both explicitly and in terms of concentration and memory difficulties. AR at 492, 554, 555, 557, 560, 632, 671. An examining psychologist also diagnosed plaintiff with multiple forms of dementia, including "Dementia Due to Head Trauma" and "Dementia Due to CVA (Stroke) with Depressed Mood" AR at 630. The ALJ did not discuss the cognitive disorder or the dementia diagnoses in her "special technique" step two analysis, although she found them to be medically determinable impairments. AR at 22.

With respect to plaintiff's ADHD and the learning disorder, psychologist Dr. Edwin Hill concluded in 2008 that plaintiffs "low verbal intellectual scores and impaired academic learning skills are likely pre-existing conditions related to longstanding problems with Attention Deficit Hyperactivity Disorder and mixed Learning Disorder problems . . ." AR at 564. Additionally, the record indicates that plaintiff believes that he has always had ADHD

ORDER - 8

but that no one ever officially diagnosed it. AR at 557. The ALJ's "special technique" step two analysis did not address the ADHD or the learning disorder diagnoses, although the ALJ identified them as medically determinable impairments. AR at 22.

Regarding plaintiff's generalized anxiety disorder, one examining psychologist noted that plaintiff's "mental ability to relate to others, including fellow workers and supervisors is markedly limited. He is impaired by his depression, anxiety, and emotional dysregulation symptoms, as well as by his cognitive impairment." AR at 630–31. Moreover, the same psychologist noted that plaintiff's "current experience of depressive / anxious / aggressive / withdrawal symptoms would make him inappropriate for employment that is socially demanding, such as meeting the public." AR at 632. Again, the ALJ did not specifically discuss plaintiff's generalized anxiety disorder in her "special technique" step two analysis.

Accordingly, the ALJ erred because she did not provide any "significant history, including examination . . . findings," with respect to plaintiff's mental impairments as required by § 404.1520a(e)(4). More fundamentally, because she did not even identify the mental impairments at issue in her "special technique" analysis, she did not "set forth the reasoning behind [her] decision[] in a way that allows for meaningful review." *Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015); *see also Blakes v. Barnhart*, 331 F.3d 565, 569 (7th Cir. 2003) ("We require the ALJ to build an accurate and logical bridge from the evidence to her conclusions so that we may afford the claimant meaningful review of the SSA's ultimate findings.").

   3. *The ALJ's Analyses of Plaintiff's Blindness and Lumbar Degeneration Were Conclusory*

With respect to plaintiff's blindness, the ALJ found that plaintiff's "right eye blindness does not result in significant limitations, especially considering he continues to drive." AR at

ORDER - 9

26. However, the fact that plaintiff continues to drive does not automatically render his right eye blindness non-severe under the regulations. *See Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001) ("One does not need to be 'utterly incapacitated' in order to be disabled."). Here, the ALJ simply asserted that plaintiff's right eye blindness was not severe without discussing any evidence in the record regarding plaintiff's eye condition. For example, the ALJ did not provide any analysis of the records of plaintiff's visit to the Northwest Vision Development Center in November 2008. At that visit, Dr. Curtis Baxstrom noted that plaintiff had previously been diagnosed with or treated for color vision problems, lazy eye, and a cyst behind the eye. AR at 570. Moreover, Dr. Baxstrom noted that plaintiff previously had eye surgery, and Dr. Baxstrom recorded that plaintiff had at various times experienced flashes of light, double vision, distance blur after reading, losing his place when reading, spots before his eyes, tired eyes, and painful eyes. AR at 570. Similarly, treating psychologist Dr. Edwin Hill concluded that plaintiff's "congenital visual difficulties" likely complicated his ADHD and learning disorder problems. AR at 564. Without more, the ALJ's conclusory assertion that plaintiff's right eye blindness does not result in any significant limitations does not meet the required level of specificity. *See Brown-Hunter*, 806 F.3d at 492 ("[T]he agency [must] set forth the reasoning behind its decisions in a way that allows for meaningful review.").

Regarding plaintiff's lower lumbar degenerative disc disease, the ALJ noted that "a June 2013 MRI of the lumbar spine showed a small central disc protrusion at the L5/S1 level resulting in only mild spinal canal stenosis without significant neuroforaminal narrowing. The undersigned finds this does not support the alleged severity of impairment." AR at 26 (citing AR at 990) (internal quotations omitted). Again, however, the ALJ's conclusory assertion does not engage with all of the evidence of severity in the medical imaging record that she cites. For example, the notes from plaintiff's June 2013 MRI reveal that plaintiff had a history of

"[s]evere low back pain with bilateral leg numbness." AR at 990. Thus, the ALJ's conclusory assertion that plaintiff's spinal impairment is not severe is not supported by substantial evidence.

                4. *The ALJ Erred in Evaluating the Medical Opinion Evidence from SLP Beckman and Dr. Rhone*

Speech Language Pathologist Channa Beckman opined that plaintiff's cognitive deficits make him unable to work. AR at 1075. The ALJ gave no weight to the opinion of SLP Beckman because she did "not cite objective medical findings in support of this opinion." AR at 27.[2] Rather, according to the ALJ, SLP Beckman relied "on the claimant's subjective statements . . ." AR at 27. "An ALJ may reject a treating physician's opinion if it is based 'to a large extent' on a claimant's self-reports that have been properly discounted as incredible." *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008) (quoting *Morgan v. Comm'r Soc. Sec. Admin.*, 169 F.3d 595, 602 (9th Cir. 1999). However, here there is nothing in SLP Beckman's report that indicates that she relied more heavily on plaintiff's subjective statements versus her own objective, clinical findings. For example, SLP Beckman noted that she used standardized speech, language, and cognitive assessments as diagnostic techniques. AR at 1076. SLP Beckman also reported that "neuropsychological assessments revealed moderate-severe attention, reasoning, executive functioning, cognitive fatigue, and memory deficits" and that plaintiff had "[i]mpaired reading comprehension." AR at 1078, 1080.

---

[2] The Court notes that, for similar reasons, the ALJ also gave no weight to the medical source opinions of Drs. Finkelman and Wingren. AR at 27. The Court has reviewed those medical source opinions, and it appears that the ALJ is correct that those doctors did not identify particular medical or clinical findings to support their opinions. In fact, they both left those portions of their medical source opinions blank. *See, e.g.*, AR at 1007, 1131. Although both doctors' treatment notes do indicate objective clinical findings, those objective clinical findings were not reported in the medical source opinions. *See, e.g.*, AR at 1353 (finding that plaintiff's "[l]umbar region exhibits paraspinous muscle tenderness" and that his "[r]ight leg [is] weakened by CVA").

ORDER - 11

Accordingly, the ALJ's assertion that SLP Beckman did not cite any objective medical findings is not accurate.

In addition, the ALJ also discredited SLP Beckman's medical opinion because it was rendered past the date last insured. AR at 27. However, SLP Beckman's opinion indicated an onset date of February 2, 2008. AR at 1075. Thus, her opinion relates to the relevant period, which ended on the date last insured of December 31, 2013.

Treating doctor Sorin Rhone, M.D., also submitted a medical source statement in which she concluded, on the basis of a physical examination, that plaintiff could sit and walk occasionally with a cane but could not "climb, twist, bend, squat, crawl, reach well above shoulders and his work with his hands is minimal." AR at 671. However, the ALJ gave no weight to this opinion "because Dr. Rhone performed minimal testing such as range of motion testing or validity testing." AR at 28. If, as here, an ALJ rejects the opinion of a treating physician, the ALJ must give clear and convincing reasons for doing so if the opinion is not contradicted by other evidence, and specific and legitimate reasons if it is. *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1988); *see also Trevizo v. Berryhill*, 871 F.3d 663, 675 (9th Cir. 2017). "This can be done by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating [her] interpretation thereof, and making findings." *Id.* (citing *Magallanes*, 881 F.2d at 751). The ALJ must do more than merely state his/her conclusions. "[She] must set forth [her] own interpretations and explain why they, rather than the doctors', are correct." *Id.* (citing *Embrey v. Bowen*, 849 F.2d 418, 421–22 (9th Cir. 1988)). Such conclusions must at all times be supported by substantial evidence. *Reddick*, 157 F.3d at 725.

Here, the ALJ's characterization of Dr. Rhone's testing as "minimal" fails to acknowledge the fact that Dr. Rhone did engage in a substantial physical examination. For

ORDER - 12

example, Dr. Rhone measured plaintiff's vital signs, checked plaintiff's reflexes, and checked plaintiff's cardiovascular system for abnormalities. AR at 670. Additionally, Dr. Rhone's exam confirmed that plaintiff is blind in his right eye, that he tends to fall to the left, and that he is unable to stand on one foot. AR at 670. Accordingly, without more, the fact that Dr. Rhone did not perform range of motion and validity testing does not provide a sufficient basis for the ALJ to reject Dr. Rhone's entire medical opinion without also discussing her examination findings.

Accordingly, for all the above reasons, the ALJ erred at step two by finding that plaintiff had no severe impairments. Whether such error is harmless depends on "whether the ALJ's decision remains legally valid, despite such error." *Carmickle*, 533 F.3d at 1162. Here, because the ALJ found that *none* of plaintiff's seventeen impairments were severe, she ended her analysis at step two. Thus, the ALJ did not provide any basis upon which this Court could find that her step two errors were harmless.

B. Scope of Remand

*1. The ALJ Should Further Develop the Record Regarding Plaintiff's Stroke*

As discussed above, the ALJ did not adequately explain her conclusion that evidence of plaintiff's impairments was insufficient to pass the *de minimis* threshold of step two. *See Smolen*, 80 F.3d at 1290. And, although plaintiff ultimately bears the burden of establishing his disability, *see Bowen*, 482 U.S. at 146, the ALJ has "an affirmative duty to supplement [plaintiff's] medical record, to the extent it [is] incomplete, before rejecting [plaintiff's] petition at so early a stage in the analysis." *Webb v. Barnhart*, 433 F.3d 683, 687 (9th Cir. 2005) (citing 20 C.F.R. § 404.1512(e)(1); S.S.R. 96–5p (1996)). "In Social Security cases the ALJ has a special duty to fully and fairly develop the record and to assure that the claimant's interests are considered." *Brown v. Heckler*, 713 F.2d 441, 443 (9th Cir. 1983) (per curiam).

ORDER - 13

The ALJ's duty to supplement the record is triggered either by ambiguous evidence, the ALJ's own finding that the record is inadequate, or the ALJ's reliance on an expert's conclusion that the evidence is ambiguous. *See Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001).

When the ALJ reviewed the record in this case, she discredited plaintiff's subjective testimony, apparently because she found affirmative evidence of malingering. *See* AR at 25, 563 (noting that a treating psychologist administered the Test of Memory and Malingering to the plaintiff and that his score was "extremely poor and suspicious for possible feigned cognitive dysfunction and/or suggestibility."). Apparently, based on her belief that plaintiff was malingering, and despite her own finding that the stroke was a medically determinable impairment in this case, the ALJ appears to question whether plaintiff did in fact have a stroke, despite the findings in the record. *See* AR at 433, 438, 556, 616, 622, 662, 671, 918, 968, 984, 1008, 1067, 1132, 1353. Regarding the stroke, the ALJ noted only that plaintiff "allegedly had a stroke in 2005 (the records do not date back this far)," and that plaintiff reportedly had a history of "right sided weakness and paresthesia." AR at 24. If plaintiff did indeed suffer a stroke, that stroke may have accounted for many of plaintiff's alleged limitations. *See* Dkt. 10 at 6.

Thus, if the ALJ could not determine, based on the record, whether plaintiff was feigning a stroke or not, this would create a sufficient ambiguity to trigger the ALJ's duty to further develop the the record. Accordingly, on remand, the ALJ should further develop the record, including potentially ordering a consultative examination to assess plaintiff's claim that he suffered a stroke in 2005.

### 2. *The Court Remands this Case to a Different ALJ*

Plaintiff alleges that "the ALJ was sarcastic and confrontational at the hearing," and that "[w]hile this behavior might not rise to the level of bias, it does cast a shadow on the

ORDER - 14

ALJ's findings." Dkt. 10 at 4.  The Court agrees that although the ALJ's behavior does not rise to the level of bias, her tone was antagonistic to a degree that the case should be heard by a different ALJ on remand.

ALJ's are presumed to be unbiased.  *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001).  This presumption can be rebutted, *id.* at 857–58, but disqualification of an ALJ requires a showing of "actual bias."  *Bunnell v. Barnhart*, 336 F.3d 1112, 1114–15 (9th Cir. 2003) (holding that the "appearance of impropriety" standard applicable to federal judges, *see* 28 U.S.C. § 455(a), does not govern ALJs, who are employed by the agency whose actions they review, and who would be required to recuse in every case if "appearance of impropriety" was the measure).  Actual bias exists if an ALJ "is prejudiced or partial with respect to any party or has any interest in the matter pending for decision."  20 C.F.R. §§ 404.940 & 416.1440.  Prejudice is demonstrated if "the ALJ's behavior, in the context of the whole case, was 'so extreme as to display clear inability to render fair judgment,'" but expressions of "impatience, dissatisfaction, annoyance, or even anger," which are "within the bounds of what imperfect men and women . . . sometimes display," do not themselves establish bias.  *Rollins*, 261 F.3d at 858 (quoting *Liteky v. United States*, 510 U.S. 540, 551, 555–56 (1994)).

The Court has carefully reviewed the transcript of the administrative hearing in this case. It is not difficult to understand how plaintiff interpreted the ALJ's behavior as sarcastic and confrontational.  For example, the transcript shows the following exchange when plaintiff tried to explain the location of his pain:

ALJ: All right.  What – so where is the – the pain is in your neck and your back?

PLAINTIFF: My head, my neck, and my back.

ALJ: You don't have pain anywhere else like your leg or anything?

PLAINTIFF: My stroke made my leg almost suicidal at times.

ORDER - 15

> ALJ: Your leg was suicidal. How does that occur? How does your leg become suicidal?

AR at 57–58.

When the ALJ asked the plaintiff to further explain the pain in his right leg, the following exchange took place:

> ALJ: Which leg was it?
>
> PLAINTIFF: My right leg.
>
> ALJ: Your right leg. So your right leg hurts now?
>
> PLAINTIFF: Yeah. Right now it hurts so bad I can hardly stand it.
>
> ALJ: You can hardly stand it. Well, you know –
>
> PLAINTIFF: And no –
>
> ALJ: – if you need to go to the emergency room please don't let me stop you.

AR at 58.

Finally, and most tellingly, at the end of the hearing, the ALJ suggested to the plaintiff that he was involved in an adversarial proceeding:

> PLAINTIFF: I feel like I'm on trial.
>
> ALJ: Well, you are.

AR at 66.

**The ALJ is reminded that administrative hearings are not supposed to be an adversarial process**. *See DeLorme v. Sullivan*, 924 F.2d 841, 849 (9th Cir. 1991) ("Disability hearings are not adversarial in nature."). It is the ALJ's duty to develop the record in this case, which required her to prompt the plaintiff to answer specific questions on several occasions. However, **the ALJ's frustration with some of plaintiff's responses during the hearing should have been tempered so as to afford the plaintiff greater respect**.

ORDER - 16

Plaintiff does not attempt to carry the heavy burden of establishing that the ALJ was prejudiced or partial in this case. The ALJ's behavior, while imperfect, was not so extreme as to display a clear inability to render fair judgment. *See Liteky*, 510 U.S. at 551. Nevertheless, the Court is remanding this case due to several harmful step two errors. In light of the fact that the administrative hearing was so antagonistic, the Court directs that this case be heard by a different ALJ on remand. Additionally, the Commissioner is directed to send a copy of this Order to the Appeals Council so that it can determine whether the ALJ's tone during the hearing was appropriate in this case.

## VIII. CONCLUSION

For the foregoing reasons, the Court ORDERS that this case be REVERSED and REMANDED to the Commissioner for further proceedings not inconsistent with the Court's instructions.

DATED this 22nd day of June, 2018.

*James P. Donohue*

JAMES P. DONOHUE
United States Magistrate Judge

ORDER - 17